# Exhibit 2

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "**Guaranty**") is executed as of June 19, 2019, by **MEYER CHETRIT**, an individual, having an address at c/o The Chetrit Group LLC, 512 Seventh Avenue, 16th Floor, New York, New York 10018 (whether one or more collectively referred to as "**Guarantor**"), for the benefit of **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**, a banking association chartered under the laws of the United States of America, having an address at 383 Madison Avenue, New York, New York 10179 ("**Lender**").

## W I T N E S S E T H:

WHEREAS, pursuant to that certain Promissory Note, dated of even date herewith, executed by THE ENTITIES LISTED ON SCHEDULE I HERETO (each, an "**Individual Borrower**" and collectively, "**Borrower**"), and payable to the order of Lender in the original principal amount of $481,000,000 (as the same may hereafter be amended, restated, renewed, supplemented, replaced, extended or otherwise modified from time to time, the "**Note**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan ("**Loan**") which is secured by the liens and security interests of certain mortgages, deeds of trust and security agreements, each dated as of the date hereof, made by an Individual Borrower for the benefit of Lender (as each of the same may hereafter be amended, restated, renewed, supplemented, replaced, extended or otherwise modified from time to time, individually or collectively, as the context may require, the "**Mortgage**"), and is further evidenced by that certain Loan Agreement, of even date herewith between Borrower and Lender (as the same may hereinafter be amended, modified, restated, renewed or replaced the "**Loan Agreement**") and further evidenced, secured or governed by such other instruments and documents executed in connection with the Loan (together with the Note, the Loan Agreement and the Mortgage are hereinafter collectively referred to as the "**Loan Documents**"); and

WHEREAS, Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment and performance to Lender of the Guaranteed Obligations (as herein defined); and

WHEREAS, Guarantor is the owner of a direct or indirect interest in Borrower, and Guarantor will directly benefit from Lender's making the Loan to Borrower.

NOW, THEREFORE, as an inducement to Lender to make the Loan to Borrower, and to extend such additional credit as Lender may from time to time agree to extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

## ARTICLE I
## NATURE AND SCOPE OF GUARANTY

**1.1    Guaranty of Obligation**. Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of

time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

**1.2** **Definition of Guaranteed Obligations**. As used herein, the term "**Guaranteed Obligations**" means all obligations and liabilities of Borrower pursuant to Section 9.3 of the Loan Agreement.

**1.3** **Nature of Guaranty**. This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor and after (if Guarantor is a natural person) Guarantor's death (in which event this Guaranty shall be binding upon Guarantor's estate and Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

**1.4** **Guaranteed Obligations Not Reduced by Offset**. The Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

**1.5** **Payment By Guarantor**. If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, upon three (3) Business Days of written demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of the Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

**1.6** **No Duty To Pursue Others**. It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other Person, (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (iii) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (iv) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining

payment of the Guaranteed Obligations.  Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

      **1.7**    **Waivers**. Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of, and any rights of consent to (i) any loans or advances made by Lender to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Note, the Mortgage, the Loan Agreement or of any other Loan Documents, (iv) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property, (v) the occurrence of any breach by Borrower or an Event of Default, (vi) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof to any Person acquiring any interest in the Loan, (vii) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, (viii) protest, proof of non-payment or default by Borrower, or (ix) any other action at any time taken or omitted by Lender in compliance with applicable law and the Loan Documents, and, generally, all demands and notices of every kind in connection with this Guaranty or the Loan Documents, except such notices and demands expressly required herein and/or therein.

      **1.8**    **Payment of Expenses**. In the event that Guarantor should fail to make any payment required to be made hereunder within the time period required hereunder or shall be found by a court of competent jurisdiction to have breached or failed to timely perform any other provisions of this Guaranty, Guarantor shall, within ten (10) Business Days or written demand by Lender, pay Lender all reasonable out-of-pockets costs and expenses (including court costs and reasonable attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder.  The covenant contained in this Section shall survive the payment and performance of the Guaranteed Obligations.

      **1.9**    **Effect of Bankruptcy**. In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect, and this Guaranty shall remain in full force and effect.  It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

      **1.10**    **Waiver of Subrogation, Reimbursement and Contribution**. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating the Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Obligations for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

      **1.11**    **Borrower**. The term **"Borrower"** as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company,

joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

## ARTICLE II
## EVENTS AND CIRCUMSTANCES NOT REDUCING
## OR DISCHARGING GUARANTOR'S OBLIGATIONS

Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which Guarantor might otherwise have as a result of or in connection with any of the following:

2.1     **Modifications**. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Mortgage, the Loan Agreement, the other Loan Documents, or any other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

2.2     **Adjustment**. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

2.3     **Condition of Borrower or Guarantor**. The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantor or any other party at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the shareholders, partners or members of Borrower or Guarantor; or any reorganization of Borrower or Guarantor.

2.4     **Invalidity of Guaranteed Obligations**. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including without limitation the fact that (i) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law, (ii) the act of creating the Guaranteed Obligations or any part thereof is *ultra vires*, (iii) the officers or representatives executing the Note, the Mortgage, the Loan Agreement or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (iv) the Guaranteed Obligations violate applicable usury laws, (v) Borrower has valid defenses (except the defense of actual payment of the Guaranteed Obligations, which payment shall not be subject to recission), claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower, (vi) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (vii) the Note, the Mortgage, the Loan Agreement or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether

Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

**2.5    Release of Obligors**. Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by Guarantor that Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of any other party, and Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to other Persons to pay or perform the Guaranteed Obligations.

**2.6    Other Collateral**. The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

**2.7    Release of Collateral**. Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

**2.8    Care and Diligence**. The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of any collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (i) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (ii) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (iii) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

**2.9    Unenforceability**. The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations.

**2.10   Offset**. The Guaranteed Obligations and the liabilities and obligations of the Guarantor to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower or Guarantor against Lender, or any other Person, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise other than the payment in full of the Guaranteed Obligations.

**2.11    Merger**. The reorganization, merger or consolidation of Borrower into or with any other Person.

**2.12    Preference**. Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

**2.13    Other Actions Taken or Omitted**. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as follows:

**3.1    Benefit**. Guarantor is the owner of a direct or indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

**3.2    Familiarity and Reliance**. Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Obligations; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

**3.3    No Representation By Lender**. Neither Lender nor any other party has made any representation, warranty or statement to Guarantor in order to induce the Guarantor to execute this Guaranty.

**3.4    Guarantor's Financial Condition**. As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities.

**3.5    Legality**. The execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any law, statute or regulation whatsoever to which Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would

constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which Guarantor is a party or which may be applicable to Guarantor. This Guaranty constitutes a legal and binding obligation of Guarantor and is enforceable in accordance with its terms, except as may be affected by bankruptcy, insolvency or other similar laws relating to or affecting the enforcement of creditors' rights and general equitable principles.

**3.6** **Litigation**. There are no actions, suits or proceedings at law or in equity by or before any Governmental Authority or other agency now pending or, to the knowledge of Guarantor, threatened in writing against or affecting Guarantor which, if adversely determined against Guarantor, would reasonably be expected to have a Material Adverse Effect.

**3.7** **Survival**. All representations and warranties made by Guarantor herein shall survive the execution hereof.

**ARTICLE IV**
**SUBORDINATION OF CERTAIN INDEBTEDNESS**

**4.1** **Subordination of All Guarantor Claims**. As used herein, the term "**Guarantor Claims**" shall mean all debts and liabilities of Borrower to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantor. The Guarantor Claims shall include without limitation all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Obligations. Upon the occurrence of an Event of Default or the occurrence of an event which would, with the giving of notice or the passage of time, or both, constitute an Event of Default, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any amount upon the Guarantor Claims.

**4.2** **Claims in Bankruptcy**. In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims. Guarantor hereby assigns such dividends and payments to Lender. Should Lender receive, for application against the Guaranteed Obligations, any such dividend or payment which is otherwise payable to Guarantor, and which, as between Borrower and Guarantor, shall constitute a credit against the Guarantor Claims, then upon payment to Lender in full of the Guaranteed Obligations, Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

**4.3** **Payments Held in Trust**. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received in violation of this Guaranty, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

**4.4** **Liens Subordinate**. Guarantor agrees that until the Debt is repaid in full, any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, until the Debt is repaid in full, neither Guarantor nor any of its Affiliates shall (i) exercise or enforce any creditor's right it may have against Borrower, (ii) create any Liens encumbering the Property, Borrower or any interest in either of the foregoing, other than Permitted Encumbrances, or (iii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgage, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

**4.5** **Annual Financial Delivery**. Guarantor shall furnish to Lender annually, within one hundred twenty (120) days following the end of each Fiscal Year of Guarantor, unaudited financial statements, which shall include a statement of the net worth and liquidity of Guarantor, in the form reasonably required by Lender.

**4.6** **Litigation**. Guarantor shall give prompt written notice to Lender of any litigation or governmental proceedings pending or threatened in writing against Guarantor which would be reasonably expected to materially adversely affect Guarantor's ability to perform its obligations under this Guaranty.

**4.7** **Covenants**. Until all of the Debt and the Guaranteed Obligations have been paid in full, Guarantor hereby covenants and agrees that Guarantor shall maintain a net worth of not less than $500,000,000.00 and liquid assets of not less than $10,000,000.00 (in each case exclusive of the Property).

**ARTICLE V**
**MISCELLANEOUS**

**5.1** **Waiver**. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom,

shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved.  No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

   **5.2**    **Notices**. Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on (a) the third day following the day such notice is deposited with the United States Postal Service first class certified mail, return receipt requested (b) expedited, prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery and by telecopier (with answer back acknowledged), addressed to the address, as set forth below, of the party to whom such notice is to be given, or to such other address as either party shall in like manner designate in writing. The addresses of the parties hereto are as follows:

Guarantor:
> c/o The Chetrit Group LLC
> 512 Seventh Avenue, 16th Floor
> New York, New York 10018
> Facsimile No.: [_____]

with a copy to:
> Greenberg Traurig LLP
> 200 Park Avenue LLP
> New York, New York 10166
> Attention:  Joseph Farrell, Esq.
> Facsimile No.:  (212) 801-6400

Lender:
> JPMorgan Chase Bank, National Association
> 383 Madison Avenue, 31st Floor
> New York, New York 10179
> Attention:  Thomas Nicholas Cassino
> Facsimile No.:  (212) 834-6029

with a copy to:
> JPMorgan Chase Bank, National Association
> SPG Middle Office/CIB
> 4 Chase Metrotech Center, 4th Floor
> Brooklyn, New York 11245
>
> Attention:  Nancy Alto
> Facsimile No.:  (917) 546-2564

and

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention:  William P. McInerney, Esq.
Facsimile No.:  (212) 504-6666

**5.3    Governing Law. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND EACH OF LENDER AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.  GUARANTOR DOES HEREBY DESIGNATE AND APPOINT:**

**NATIONAL REGISTERED AGENTS, INC.
111 EIGHTH AVENUE
NEW YORK, NEW YORK 10011**

**AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO GUARANTOR IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.**

**5.4    Invalid Provisions**. If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**5.5** **Amendments**. This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

**5.6** **Parties Bound; Assignment; Joint and Several**. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives, including any executor or administrator of Guarantor's estate; provided, however, that Guarantor may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder. If Guarantor consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

**5.7** **Headings**. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

**5.8** **Recitals**. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered *prima facie* evidence of the facts and documents referred to therein.

**5.9** **Counterparts**. To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

**5.10** **Rights and Remedies**. If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

**5.11** **Other Defined Terms**. Any capitalized term utilized herein shall have the meaning as specified in the Loan Agreement, unless such term is otherwise specifically defined herein.

**5.12** **Entirety**. THIS GUARANTY EMBODIES THE FINAL, ENTIRE AGREEMENT OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTOR'S GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF. THIS GUARANTY IS INTENDED BY GUARANTOR AND LENDER AS A FINAL AND COMPLETE

EXPRESSION OF THE TERMS OF THE GUARANTY, AND NO COURSE OF DEALING BETWEEN GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT.  THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTOR AND LENDER.

**5.13**  **Waiver of Right To Trial By Jury.** EACH OF GUARANTOR AND LENDER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE LOAN AGREEMENT, THE MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH OF GUARANTOR AND LENDER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY EACH OF GUARANTOR AND LENDER.

**5.14**  **Cooperation.**  Guarantor acknowledges that Lender and its successors and assigns may, (i) sell this Guaranty, the Note and other Loan Documents to one or more investors as a whole loan, (ii) participate the Loan secured by this Guaranty to one or more investors, (iii) deposit this Guaranty, the Note and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets, or (iv) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (i) through (iv) are hereinafter each referred to as "**Secondary Market Transaction**").  Guarantor shall reasonably cooperate with Lender in effecting any such Secondary Market Transaction and shall reasonably cooperate to implement all customary and reasonable requirements imposed by any Rating Agency or potential investor involved in any Secondary Market Transaction.  Guarantor shall provide such information and documents relating to Guarantor as Lender may reasonably request in connection with such Secondary Market Transaction.  In addition, Guarantor shall make available to Lender all information concerning its business and operations not in the possession of Lender or which may be reasonably requested by Lender to satisfy the market standards to which Lender customarily adheres or which may be reasonably required by prospective investors and/or the Rating Agencies in connection with any such Secondary Market Transaction.  Lender shall be permitted to share all such information with the investment banking firms (or other potential investors), Rating Agencies, accounting firms, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the applicable Secondary Market Transaction.  It is understood that the information provided by Guarantor to Lender may ultimately be incorporated into the offering documents for the Secondary Market Transaction and thus various investors may also see some or all of the information.  Lender and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information

supplied by, or on behalf of, Guarantor in the form as provided by Guarantor. Lender may publicize the existence of the Loan in connection with its marketing for a Secondary Market Transaction or otherwise as part of its business development. Notwithstanding the foregoing, Lender agrees to require people accessing the Guarantor financial information are advised of the confidential nature of the disclosed information and shall enter into or click through a certification containing a customary confidentiality provision in the applicable form provided in the Servicing Agreement or a confidentiality agreement on customary terms reasonably approved by Lender (other than (a) Affiliates of Lender and Lender's agents and advisors (it being understood that the Persons to whom the applicable disclosure is made will be informed of the confidential nature of the disclosed information and instructed to keep such information confidential) or (b) any Governmental Authority or other governmental agency, including the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the FDIC, the Securities and Exchange Commission and any other regulatory authority that may exercise authority over Lender or any investor in the Securities (including the Servicer and their respective agents and employees) or any representative thereof, and to the National Association of Insurance Commissioners).

**5.15    Reinstatement in Certain Circumstances**. If at any time any payment of the principal of or interest under the Note or any other amount payable by Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of Borrower or otherwise, the Guarantor's obligations hereunder with respect to such payment, if any, shall be reinstated as though such payment has been due but not made at such time.

**5.16    Special State Provisions**.

(a)    With respect to the foregoing provisions contained in this Guaranty, the following shall apply with respect to the State of Texas:

(i)    Guarantor hereby expressly waives: (i) any right to revoke this Guaranty with respect to the Guaranteed Obligations; (ii) any right to require Lender to do any of the following before Guarantor is obligated to pay or perform the Guaranteed Obligations or before Lender may proceed against Guarantor: (A) sue or exhaust remedies against Borrower or any other Person liable for the Guaranteed Obligations or any portion thereof; (B) sue on an accrued right of action in respect of any of the Guaranteed Obligations or bring any other action, exercise any other right, or exhaust any other remedy; or (C) enforce rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Obligations; (iii) any right relating to the timing, manner or conduct of Lender's enforcement of rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Obligations; (iv) if Guarantor and Borrower (or any other Person) have each pledged assets to secure the Guaranteed Obligations, any right to require Lender to proceed first against collateral pledged by Borrower (or any other Person) before proceeding against the collateral pledged by Guarantor; (v) other than as provided for in this Agreement or the Loan Documents, promptness, diligence, notice of any Event of Default, notice of nonpayment or nonperformance, notice of acceleration or intent to accelerate, demand for payment (although Lender may, but shall have no obligation to, make demand for payment),

acceptance or notice of acceptance of this Guaranty, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrower of additional indebtedness, notice of any suit or other action by Lender against Borrower or any other Person, any notice to any Person liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Obligations and this Guaranty; and (vi) each of the foregoing rights or defenses, regardless of whether they arise under (A) Rule 31 of the Texas Rules of Civil Procedure, (B) Section 17.001 of the Texas Civil Practice and Remedies Code, (C) Chapter 34 of the Texas Business and Commerce Code, or (D) any other statute or law, common law, in equity, under contract or otherwise, or under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law; and (vii) subject to Section 9.3 of the Loan Agreement, any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, and under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law.

**[NO FURTHER TEXT ON THIS PAGE]**

EXECUTED as of the day and year first above written.

GUARANTOR:

_____
Meyer Chetrit, an individual

## SCHEDULE I

### BORROWER

1.    Barrington Park Owner LLC, a Delaware limited liability company

2.    Chateau Glen Oaks Owner LLC, a Delaware limited liability company

3.    Manchester Park Owner LLC, a Delaware limited liability company

4.    Vista Place Owner LLC, a Delaware limited liability company

5.    Atwood Owner LLC, a Delaware limited liability company

6.    Colonial Forest Owner LLC, a Delaware limited liability company

7.    Davis Gardens Owner LLC, a Delaware limited liability company

8.    Northwood Owner LLC, a Delaware limited liability company

9.    University Courtyard Owner LLC, a Delaware limited liability company

10.   Knoxville Pointe Owner LLC, a Delaware limited liability company

11.   Abington Owner LLC, a Delaware limited liability company

12.   Cheswick Village Owner LLC, a Delaware limited liability company

13.   Colfax Owner LLC, a Delaware limited liability company

14.   Edison Pointe Owner LLC, a Delaware limited liability company

15.   Hickory Ridge Property Owner LLC, a Delaware limited liability company

16.   Winchester Village Owner LLC, a Delaware limited liability company

17.   Winchester Woods Owner LLC, a Delaware limited liability company

18.   Chateau Royale Owner LLC, a Delaware limited liability company

19.   East Gate Owner LLC, a Delaware limited liability company

20.   Hallmark Gardens Owner LLC, a Delaware limited liability company

21.   North Gate Owner LLC, a Delaware limited liability company

22.   Pebble Creek Owner LLC, a Delaware limited liability company

23.   Southwind Owner LLC, a Delaware limited liability company

24.     Advantages Owner LLC, a Delaware limited liability company

25.     Timber Ridge Owner LLC, a Delaware limited liability company

26.     Caleb's Creek Holdings LLC, an Ohio limited liability company

27.     Fox Chase Apartments 1 LLC, a Delaware limited liability company

28.     Galloway Apartments LLC, an Ohio limited liability company

29.     ROCO – High Point in the Park, LLC, a Delaware limited liability company

30.     RoCo–Hilliard, LLC, a Delaware limited liability company

31.     Trotwood Holdings LLC, an Ohio limited liability company

32.     ROCO–Loganberry, LLC, an Ohio limited liability company

33.     ROCO–Parkside, LLC, an Ohio limited liability company

34.     Quail Creek Investments LLC, a Delaware limited liability company

35.     Steeplechase Advisers II LLC, a Delaware limited liability company

36.     Lakes at Ridgeway Owner LLC, a Delaware limited liability company

37.     Moriah Owner LLC, a Delaware limited liability company

38.     Stonegate Owner LLC, a Delaware limited liability company

39.     Arlington Owner LLC, a Delaware limited liability company

40.     Forest View Owner LLC, a Delaware limited liability company

41.     Riverside Ranch Owner LLC, a Delaware limited liability company

42.     Shadow Creek Owner LLC, a Delaware limited liability company

43.     University Hill Owner LLC, a Delaware limited liability company