**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7615**

February 24, 2026

WRITER'S EMAIL ADDRESS
**blairadams@quinnemanuel.com**

<u>Via ECF</u>
The Honorable Dale E. Ho
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 905
New York, NY 10007

Re:    *Wells Fargo v. JPMorgan Chase et al.*, 25-cv-01943 (Related Case No. 23-cv-09972)

Dear Judge Ho:

We represent Plaintiff and write in response to Defendant JPMorgan Chase Bank's ("<u>JPM</u>") February 19, 2026 request for a Rule 37.2 conference regarding the deposition of Brian Baker. JPM's request to preclude the deposition should be denied.

Contrary to JPM's contention, Mr. Baker was not just one member of a bureaucratic committee tangentially connected to the mortgage loan underlying this dispute. Mr. Baker instead was directly responsible for JPM's decision to lend and, in that role, was personally alerted to the inaccurate financial statements that JPM used to originate the loan. Given that JPM continues to cling, even now, to the claim that it was a "victim" of a fraud that it was told about repeatedly for months, Mr. Baker's testimony is highly relevant and plainly warranted. His knowledge further evidences that JPM underwrote the loan with "actual knowledge" that the borrower delivered materially inaccurate financial statements, in breach of its representations and warranties. JPM's assertion that Plaintiff's deposition of Mr. Baker is untimely is plainly wrong and asks the Court to punish Plaintiff for exercising discretion in pursuing additional JPM witnesses, while ignoring JPM's own responsibility for any purported delay.

As Plaintiff's December 4, 2025 and January 29, 2026 letters explained (ECF Nos. 77-1 and 77), Mr. Baker was involved from the outset, helping to originate the deal via his relationship with Robert Verrone, an advisor to the borrower. *See* Ex. 1. Mr. Baker, moreover, was not merely a part of JPM's credit committee; he was its critical decisionmaker. According to JPM's late-produced policies, Mr. Baker's approval was necessary for JPM to originate any loan. *See* Ex. 2, at JPMC-WF-00487415. That is no doubt why Mr. Verrone separately and specifically alerted Mr. Baker when they uncovered that the historical financials for ROCO fraudulently inflated income by including "$3.5MM of other income that [they] did not believe was actually being collected" and understating repairs and maintenance expenses by an additional $3 million. Ex. 3; *see also* Ex. 4 (describing the $3.5 million in other income as "not real or being collected").

Armed with this knowledge, Mr. Baker led JPM's credit committee in rejecting the deal team's first attempt to obtain approval for the loan at a critical May 28, 2019 meeting, ordering

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

the deal team to "re-committee" the deal after conducting further analysis because of the "amount of unknown info." *See* Ex. 5. During that meeting, attendees compared the ROCO loan to the shoddy loan practices that caused the 2008 financial crisis, and then "thank[ed] goodness for [Brian] Baker" when the credit committee denied approval. *See* Ex. 6. The credit committee asked for numerous follow-ups from that meeting, including bank statements to reconcile against the historically reported income for the ROCO properties and a "Baker Value Analysis," named such because Mr. Baker requested it. *See* Ex. 7. JPM never performed the bank-statement reconciliation requested by the credit committee (and required by JPM's policies and procedures) and ignored "other misrepresentations" in the historical financials disclosed by the borrower's representatives between the May and June credit committee meetings. Ex. 8. JPM completed the Baker Value Analysis—but it has inexplicably failed to produce it yet, despite having agreed to do so last month. Incredibly, JPM also came up with new "underwriting" for the loan that—unlike the underwriting submitted to the May 28 committee—used the historical financials that JPM knew were inaccurate instead of the much lower budgeted figures the borrower used precisely because the historical numbers were wrong. *Compare* Ex. 9, at JPMC-WF-00145640 (financial statements presented at the May 28 credit committee using the borrower's corrected budget), *with* Ex. 10, at JPMC-WF-00007567 (financial statements presented at the June 11 credit committee adopting the seller's incorrect figures for other income). Both the credit committee and Mr. Baker nonetheless approved the transaction when it returned to the credit committee in June 2019. *See* Ex. 11 (Baker's final transaction approval). Mr. Baker personally approved the transaction despite knowing that the deal team had presented the credit committee with both historical and underwritten income figures that included materially erroneous income.

Despite Plaintiff's stated willingness to accommodate Mr. Baker's schedule and even limit his time on the record, JPM has refused to make him available. Yet every one of JPM's arguments in support of its requested protective order is wrong.

*First*, Plaintiff's notice—served well within the discovery period—was not "untimely." Federal Rule of Civil Procedure 30(b)(1) requires only "reasonable written notice." Plaintiff amply met that requirement. Any so-called delay falls squarely at JPM's feet. From the start, JPM obscured Mr. Baker's fundamental role in the transaction, failing to disclose Mr. Baker in its initial disclosures and then refusing to search both his records and those of the credit committee during document discovery. It was not until shortly before the substantial completion deadline on October 13, 2025, that JPM produced the bulk of the documents revealing Mr. Baker's importance, and not until January 14, 2026, that JPM produced the policies and procedures requiring Mr. Baker's individual approval for the transaction. JPM also still has not produced the "Baker Value Analysis," despite having agreed to produce the document a month ago.

JPM's erroneous untimeliness argument is particularly misplaced given its "apex" arguments addressed below. JPM would surely have complained that an earlier notice was premature and claimed that Plaintiff should exhaust other potential sources of information first. Plaintiff did just that, timely serving Mr. Baker's notice only after JPM's other witnesses testified that they did not recall key events or JPM failed to produce key documents. Equally meritless is JPM's suggestion that it was hoodwinked when agreeing to enlarge the number of depositions. As JPM obliquely concedes, Plaintiff ***never*** agreed to forego the possibility of seeking depositions of additional JPM witnesses to account for a situation just like this.

*Second*, JPM's "apex" arguments are incorrect. The apex doctrine is designed to protect executives who are uninvolved in the underlying issues relevant to a case and therefore not subject to proper inquiry. Mr. Baker is not that executive for this loan.

Even if Mr. Baker were considered an "apex" witness, JPM "bears the burden of showing good cause for why the deposition should not be allowed." *GMO Gamecenter USA v. Whinstone US*, 2024 WL 3833882, at *4 (S.D.N.Y. Aug. 14, 2024). Meeting this burden requires "proving that the proposed deponent has **nothing to contribute**." *loanDepot.com, LLC v. CrossCountry Mortg., LLC*, 2024 WL 2154189, at *1 (S.D.N.Y. Apr. 9, 2024) (citation omitted) (emphasis added). Accordingly, JPM must show that Mr. Baker has "no personal knowledge of the relevant facts **and** no unique knowledge of those facts." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 WL 3476735, at *12 (S.D.N.Y. Nov. 30, 2006) (emphasis added). JPM cannot meet this burden where Mr. Baker "has concededly participated directly in [at least] a pertinent event, and hence he is appropriately subject to questioning about his participation." *Id*. at 13.\*

Moreover, Plaintiff has exhausted other discovery. Every JPM witness who has testified so far has been unwilling or unable to provide an adequate recounting of what happened at the credit committee meetings and the ensuing follow-up, including why JPM failed to complete the diligence that Mr. Baker and others requested at the May 28 meeting. *See, e.g.*, Ex. 13, at 217:9-225:25 (JPM Executive Director Elizabeth King: "I didn't recall the specifics [of the May 28 credit committee], but in reviewing certain documents, I know there were many follow-ups to the final credit committee.… Sitting here today, I hadn't recalled, like, the actual final committee or anything after it.… I didn't remember the actual committee.")); Ex. 14, 170:16-174:25 (JPM Associate Alexander Roth: "I'd assume I attended [the May 28 credit committee], but I don't have any recollection of the meeting.… I don't recall if we specifically did [request bank statements] after the credit committee.")). The apex doctrine is thus no bar to Mr. Baker's deposition.

For these reasons, Plaintiff respectfully requests that JPM's anticipated motion for a protective order be denied.

Respectfully submitted,

Blair A. Adams

---

\*      JPM's lead support, citing *Chang v. Mizuho Secs. USA LLC*, 2024 WL 3824101 (S.D.N.Y. Aug. 15, 2024), is in fact a **party**'s letter to the court. The Court's actual decision ordered that the executive could be deposed. *See id.*; ECF No. 80, at 3 (Ex. 12). *Local 2507 v. City of New York* involved a deposition of the New York City Fire Commissioner who had no involvement in the case. 787 F. Supp. 3d 4, 7 (S.D.N.Y. 2025). Similarly, in *Hallmark Licensing LLC v. Dickens Inc.*, the court held that the deponent's position in the company, standing alone, could not justify her deposition. 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018).