# EXHIBIT 12

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 19, 2026

Via ECF

The Honorable Dale E. Ho,
  U.S. District Court for the Southern District of New York,
    Thurgood Marshall U.S. Courthouse,
      40 Foley Square, Courtroom 905,
        New York, NY  10007.

> Re:    *Wells Fargo Bank, N.A.* v. *JPMorgan Chase Bank, N.A., et al.,*
>        Case No. 25-cv-01943

Dear Judge Ho:

I write on behalf of JPMorgan Chase Bank, N.A. ("JPMorgan") to request a Local Rule 37.2 conference regarding JPMorgan's anticipated motion for a protective order quashing Plaintiff's eleventh-hour demand to depose a senior executive—Brian Baker, JPMorgan's Global Head of Commercial Mortgage-Backed Securities ("CMBS")—on little more than two weeks' notice.  Mr. Baker was not a member of the team that was involved in the loan at issue in this case; his knowledge, if any, is derivative of other direct participants who Plaintiff has deposed or will be deposing, including five other present or former JPMorgan employees; he was not identified by Plaintiff as a potential deponent at any time until this past Friday, just three weeks before the close of fact discovery; and Plaintiff has not identified any unique knowledge he might have to justify the belated and harassing request for his deposition.

This case arises out of a $481 million mortgage loan ("Loan") that JPMorgan originated and then securitized through a CMBS trust in 2019.  The Loan was used to finance the acquisition by a third party of a real estate portfolio from ROCO Real Estate LLC ("ROCO").  Years later, ROCO's CEO pled guilty to falsifying certain financial records.  Through this action, Plaintiff (the Trustee of the CMBS trust) seeks to hold JPMorgan liable for ROCO's criminal conduct, even though JPMorgan was a victim and knew nothing of any fraud.

As explained in JPMorgan's still pending motion to dismiss (ECF No. 43), to state a claim for repurchase of the Loan, Plaintiff has the high burden to show that JPMorgan had "actual knowledge" of ROCO's fraud—something that Plaintiff's extensive discovery has shown Plaintiff cannot prove.  Seemingly recognizing this, on January 29, three months after the substantial completion deadline for document discovery, Plaintiff filed a letter (ECF No. 77) seeking for the first time to require JPMorgan to search and produce Mr. Baker's custodial documents, in the hopes of unearthing evidence that might

save its claim.  But as JPMorgan showed in opposition (ECF No. 79), Plaintiff's demand for documents is both untimely and objectionable because Mr. Baker is a senior executive who had at most a tangential and indirect involvement in the transaction and whose limited involvement is duplicative of other witnesses whose documents have already been produced.  On February 12, Plaintiff attempted to up the ante by unilaterally noticing Mr. Baker's deposition for March 2—just four days before the close of fact discovery.  JPMorgan immediately objected in writing, and the parties met and conferred on February 17 at approximately 2:30 PM (EST).  Plaintiff refused to withdraw the untimely notice.

Beyond being untimely, Plaintiff's last-minute demand to depose Mr. Baker on little more than two weeks' notice is improper harassment.  The apex doctrine prohibits depositions of high-ranking executives, like Mr. Baker, unless Plaintiff can show the deponent possesses unique, firsthand knowledge that Plaintiff has been unable to obtain through other, less burdensome means.  Plaintiff does not come close.  Mr. Baker had no role whatsoever in diligencing the Loan; his only role was as a member of the Committee that ultimately approved CMBS loans—a process that has already been the subject of substantial discovery, including documents and depositions from *every* member of the core JPMorgan team that actually underwrote and diligenced the Loan.  The Court should issue a protective order prohibiting Mr. Baker's deposition.

## I.     Plaintiff's Demand to Depose Mr. Baker Is Untimely and Unreasonable.

In October 2025, Plaintiff contacted JPMorgan to request its agreement to expand the number of depositions permitted under Federal Rule of Civil Procedure 30(a)(2)(A)(i).  JPMorgan's view was that expanding the number of depositions was unnecessary, but it engaged with Plaintiff in an attempt to avoid the need for judicial intervention.  As part of those negotiations, the parties exchanged witness lists of anticipated deponents.  Plaintiff identified five current and former JPMorgan employees that Plaintiff intended to depose.  This list included every member of the core deal team that conducted diligence on the Loan, as well as Joseph Geoghan, who served on the Underwriting Committee.  Mr. Baker was not on Plaintiff's list, even though Plaintiff knew that Mr. Baker was a member of the Committee.  What is more, Plaintiff's counsel represented to JPMorgan that, at the time, and while reserving rights, Plaintiff had no intention of seeking depositions from any other personnel at JPMorgan.  Based in part on that representation, JPMorgan agreed to expand the number of depositions beyond the usual limits of the Federal Rules.  Plaintiff has since noticed or subpoenaed the deposition of 15 individuals, including the five JPMorgan witnesses and not counting Mr. Baker.

In the following months, Plaintiff said nothing about any intention to depose Mr. Baker.  Then, two-and-a-half months after the scope of depositions had seemingly been settled, and three weeks before the close of fact discovery, on February 12, Plaintiff unilaterally noticed Mr. Baker's deposition for March 2.  There is no excuse for Plaintiff's failure to notice the deposition sooner. It should be quashed on that ground alone.

## II.    Mr. Baker's Deposition Is Prohibited by the Apex Doctrine.

Mr. Baker's deposition should also be precluded under the apex doctrine.  The apex doctrine "insulates high-level company witnesses from testifying unless the party seeking their testimony establishes that the witness: (1) has unique, non-repetitive,

firsthand knowledge of the facts at issue; and (2) that other less intrusive means have been exhausted without success." *Chang* v. *Mizuho Sec. USA LLC*, 2024 WL 3824101, at *2 (S.D.N.Y. Aug. 15, 2024). The doctrine stems from concerns that "[p]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Id.* at *2 (citation omitted).

        *First*, Mr. Baker is exactly the type of high-ranking executive the apex doctrine is intended to protect. Mr. Baker is Global Head of CMBS at JPMorgan, responsible for all CMBS activity at the bank. Courts have applied the doctrine to individuals with similar executive roles. *See, e.g.*, *Chang*, 2024 WL 3824101, at *3 (applying doctrine to head of "Americas Investment & Corporate Banking" division); *Hallmark Licensing LLC* v. *Dickens Inc*., 2018 WL 6573435, at *4–5 (E.D.N.Y. Dec. 13, 2018) (applying doctrine to "Vice-President for Retail Product Development").

        *Second*, Plaintiff cannot show that Mr. Baker possesses any unique knowledge relevant to Plaintiff's claim. In March 2019, the ROCO transaction was just one of 174 deals exceeding $50 million in JPMorgan's CMBS pipeline that Mr. Baker oversaw, with an estimated aggregate deal value exceeding $35 billion. Mr. Baker played at most an indirect oversight role here, sitting as just one member of a Committee that reviews all similar loans. He had no role in diligencing the Loan, and thus has no insight into whether the deal team had any "actual knowledge" of ROCO's fraud. On the other hand, Plaintiff has already deposed, or is set to depose, every member of the core deal team that underwrote and diligenced the Loan, including Joseph Geoghan, who also served on the Committee. On those facts, Plaintiff cannot show that Mr. Baker has any "unique, non-repetitive, firsthand knowledge" beyond what these other witnesses possess. *Chang*, 2024 WL 3824101, at *2; *see also Hallmark*, 2018 WL 6573435, at *5.

        The fact that Mr. Baker was one of the "ultimate decision-maker[s]" who approved the Loan is "of no moment," and is insufficient to justify his deposition. *Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors* v. *City of New York*, 787 F. Supp. 3d 4, 7–8 (S.D.N.Y. 2025); *see also Chang*, 2024 WL 3824101, at *3 ("[T]he unremarkable proposition that a CEO might have a final sign-off on the annual payment of bonuses does not get Plaintiffs close to meeting their burden under this District's apex witness doctrine."). This is particularly true here, because JPMorgan's decision to approve the Loan is not at issue. Rather, Plaintiff's sole claim is predicated on JPMorgan uncovering "actual knowledge" of ROCO's fraud during the underwriting and diligence process—a process that did not involve Mr. Baker. *See* Complaint (ECF No. 1) ¶¶ 97–134.

        *Third*, Plaintiff cannot show that "other less intrusive means have been exhausted without success." *Chang*, 2024 WL 3824101, at *2. Plaintiff already questioned Elizabeth King, who led the JPMorgan deal team, extensively about the Committee process*, see, e.g.*, Ex. A, at 27–32, 44–45, 75–79, 139–44, 251–54, and will have ample opportunity to do the same with other JPMorgan witnesses it is scheduled to depose, including Mr. Geoghan, another member of the Committee. Whatever information Plaintiff seeks "can be obtained from [these] other source[s] that [are] more convenient [and] less burdensome." *Shiber* v. *Centerview Partners LLC*, 2023 WL 3071554, at *3 (S.D.N.Y. Apr. 25, 2023) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

Sincerely,

/s/ *Robert A. Sacks*
Robert A. Sacks

cc:    All counsel (via ECF)