UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>               Plaintiff,<br><br>        v.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, et al.,<br><br>               Defendants. | 25 Civ. 1943 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Wells Fargo Bank ("Plaintiff" or "Wells Fargo") sues Defendants JPMorgan Chase Bank ("JPMorgan"), Meyer Chetrit, and Shadow Creek Owner, LLC ("Shadow Creek") for breach of contract. Wells Fargo also brings a reformation claim against Shadow Creek and a claim of fraudulent transfer against Defendant 3100 Daniel McCall Drive, LLC.

Defendant JPMorgan has moved to dismiss Wells Fargo's first breach of contract claim. ECF. No. 42. For the reasons below, JPMorgan's Motion to Dismiss is **DENIED**.

## BACKGROUND

The Court limits its discussion of facts to those relevant for Count I of the Complaint, which is the subject of JPMorgan's Motion to Dismiss. The following facts are taken from the Complaint, and assumed to be true for purposes of adjudicating the Motion. *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

In early 2019, the Chetrit Group sought to acquire a portfolio of 43 real estate properties from ROCO Real Estate, LLC. Compl. ¶¶ 2, 22-23. The Chetrit Group obtained a mortgage loan (the "Mortgage Loan") from Defendant JPMorgan to finance the acquisition of the real estate portfolio. *Id.* ¶¶ 21-23. The loan was later sold to a JPMorgan affiliate and deposited into a trust

serviced by Situs Holdings.  Compl. ¶¶ 9, 21, 24-27.  The Mortgage Loan and its transfer to the trust are governed by multiple contractual agreements, including the Mortgage Loan Purchase and Sale Agreement ("MLPA"),[1] ECF No. 1-1, and the Loan Agreement,[2] ECF No. 1-3.

Under the Loan Agreement between JPMorgan and the Chetrit Group, "Default" is defined as "the occurrence of any event hereunder or under any other Loan Document which, but for the giving of notice or passage of time, or both, would be an Event of Default."  Loan Agreement at 8.  Section 8 of the Loan Agreement defines Events of Default under the agreement.  *Id.* at 109-12.  Article 8.1(a)(v) provides that an Event of Default occurs under the agreement:

> if any representation or warranty made by Borrower herein or in any other Loan Document, or in any report, certificate, financial statement or other instrument, agreement or document furnished to Lender by or on behalf of Borrower after the date hereof shall have been false or misleading in any material respect as of the date the representation or warranty was made;

*Id.* at 109.

Article 4 of the Loan Agreement lays out the Borrower's representations and warranties to the Lender.  *Id.* at 56-70.  These include the warranty that:

> All financial data, including, without limitation, the statements of cash flow and income and operating expense, that have been delivered to Lender by Borrower in connection with the Loan (a) are true, complete and correct in all material respects, (b) accurately represent the financial condition of Borrower and each Individual Property, as applicable, as of the date of such reports, and (c) to the extent prepared or audited by an independent certified public accounting firm, have been prepared in accordance with GAAP throughout the periods covered, except as disclosed therein. . . .

*Id.* at 60.  These also include the warranty that:

---

[1] The MLPA binds JPMorgan (the "Lender" for purposes of the agreement) and the "Borrowers" to the agreement, including as relevant here, the Chetrit Group.

[2] The Loan Agreement binds JPMorgan (the "Seller" for purposes of the agreement) and J.P. Morgan Chase Commercial Mortgage Securities Corp. (the "Purchaser" for purposes of the agreement).  The latter is the JPMorgan affiliate that deposited the loan into the trust serviced by Situs.

All information submitted by and on behalf of Borrower to Lender and in all financial statements, rent rolls (including the rent roll attached hereto as Schedule V), reports, certificates and other documents submitted in connection with the Loan or in satisfaction of the terms thereof and all statements of fact made by Borrower in this Agreement or in any other Loan document, are true, complete and correct in all material respects. There has been no material adverse change in any condition, fact, circumstance or event that would make any such information inaccurate, incomplete or otherwise misleading in any material respect or that otherwise materially and adversely affects or would reasonably be expected to materially and adversely affect the use, operation or value of any Individual Property or the business operations or the financial condition of Borrower. Borrower has not failed to disclose any material fact that would be reasonably expected to cause any Provided Information or representation or warranty made herein to be materially misleading.

*Id.* at 67.

Like the Loan Agreement, the MLPA also provides for representations and warranties.

Exhibit A to the MLPA states that:

"To the best of the Seller's Knowledge (as defined below) after due inquiry, (a) there is no monetary or material non-monetary Event of Default (as defined in the Loan Agreement) existing under any of the Mortgage Loan Documents, (b) there is no event which, with the passage of time or with notice and the expiration of any applicable grace or cure period, would constitute a material Event of Default under any of the Mortgage Loan Documents and (c) the Seller has not waived any Event of Default. "Seller's Knowledge" means the actual knowledge of any of the individuals at the Seller who were actively involved in the origination, administration or servicing of the Mortgage Loan."

MLPA at A-1. Section 8(a) of the MLPA addresses remedies upon breach, and provides in relevant part that: "if there is a breach of any representation or warranty made by the Seller relating to the Mortgage Loan as set forth in Exhibit A hereto," and such "breach materially and adversely affects the value of the Mortgage Loan or the interest of the Purchaser (or the holders of the Certificates) therein . . . (a . . . 'Material Breach,' . . .)," then "the party discovering . . . Material Breach shall promptly notify the Seller." *Id.* at 10. Section 8(a) further provides that "[w]ithin 90 days" of such notice, "the Seller shall either (x) repurchase the Mortgage Loan . . . at an amount equal to the Repurchase Price (as defined in the Trust and Servicing Agreement), (y) promptly cure

3

such . . . Material Breach, as the case may be, in all material respects or (z) if such . . . Material Breach is not related to the Mortgage Loan not being a Qualified Mortgage, indemnify the Trust for the losses directly related to such Material Breach . . .” *Id.*

ROCO Real Estate falsified financial records, specifically the T12 operating statements, associated with the 43 properties in the real estate portfolio to overstate the properties' value. Compl. ¶¶ 54, 60.  Wells Fargo alleges that the Chetrit Group discovered ROCO Real Estate's falsification while undertaking due diligence as a precursor to receiving JPMorgan's loan to finance the properties' acquisition.  *Id.* ¶¶ 52-55.  Wells Fargo alleges that JPMorgan requested, and the Chetrit Group provided bank statements from ROCO Real Estate that could have been used to verify the accuracy of ROCO Real Estate's T12 statements.  *Id.* ¶ 54.  Wells Fargo alleges that after discovering the falsification of T12 statements, the Chetrit Group confronted ROCO Real Estate about the discrepancy, and ROCO Real Estate confirmed that it had overreported the properties' value.  *Id.* ¶ 57.  Wells Fargo alleges that the Chetrit Group then "informed [JPMorgan] that the T12s contained false and inaccurate information, including that $3.5 million in income reflected on the T12s 'did not exist' and was not 'actually being collected' and that the T12s underreported operating expenses."  *Id.* ¶ 58.  Wells Fargo alleges that JPMorgan therefore had "actual knowledge" that the T12s contained materially false information.  *Id.*

Wells Fargo alleges that, even though JPMorgan had actual knowledge that the T12s were falsified and had access to financial records that would enable it to undertake its own due inquiry into the fraudulent reporting, JPMorgan instead then used the false T12s throughout the process of originating and selling the Mortgage Loan to the trust and marketing the transaction to the public. *Id*. ¶¶ 61-63.  Wells Fargo further alleges that JPMorgan provided the false T12s to its appraiser and ultimately used the resulting appraised value of the properties to market the trust to investors.

*Id.* ¶ 63. Wells Fargo alleges that, because JPMorgan had knowledge of the false T12s, it breached its warranties and representations under the MLPA. *Id.* ¶ 68.

## LEGAL STANDARD

JPMorgan Chase brings its Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 230 (E.D.N.Y. 2013) ("Although this Court must accept the factual allegations set forth in Plaintiffs' complaint as true, threadbare recitals and conclusory statements unsupported by specific facts are not entitled to such credence").

## DISCUSSION

To successfully bring a breach of contract claim under New York law,[4] a plaintiff must plead: "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract by [the] defendant; and (4)

---

[3] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[4] There is no dispute that New York law applies to the contractual agreements underlying Count I of the Complaint.

damages to the plaintiff caused by the defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).  In its Motion to Dismiss, JPMorgan disputes only the third element, arguing that (1) Wells Fargo has failed to allege that JPMorgan had actual knowledge of ROCO Real Estate's fraudulent reporting, which would be necessary to determine that JPMorgan breached its warranties under the applicable loan agreements, and that (2) Wells Fargo has failed to allege that there was any "material breach" as defined in the MLPA. Memorandum of Law in Support of Motion to Dismiss ("Def. Memo") at 2-3, ECF No. 43.  The Court addresses each argument in turn.

## I.    Actual Knowledge

To bring its claim of breach, Wells Fargo must sufficiently allege that JPMorgan had actual knowledge of an Event of Default as defined in the MLPA, which incorporates the Loan Agreement's definition of an Event of Default.  MLPA at A-1.  The Loan Agreement defines an Event of Default to include circumstances where "any representation or warranty made by Borrower herein or in any other Loan document, or in any report, certificate, financial statement or other instrument, agreement or document furnished to Lender by or on behalf of Borrower after the date hereof shall have been false or misleading in any material respect."  Loan Agreement at 109.  On this motion, JPMorgan does not contest that the T12 reports provided by ROCO Real Estate to the Chetrit Group were false as defined in the MLPA.  However, JPMorgan argues that Wells Fargo has failed to adequately allege that JPMorgan had actual knowledge of the falsification, and that therefore the claim of breach against it must be dismissed.  Def. Memo at 14-18.

In order to bring a breach of contract claim premised on Defendant's knowledge of the breach of a contractual warranty, "[p]laintiffs do not need to refer to breaches of particular representations and warranties" to survive a motion to dismiss.  *Blackrock Allocation Target*

*Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246, 258 (S.D.N.Y. 2016). Rather, at the motion to dismiss stage, it is sufficient to allege breach through indicia that would allow the inference of actual knowledge. *See Blackrock*, 180 F. Supp. at 259 ("The Complaint alleges that [Defendant] discovered and knew of [material breaches] of representations and warranties through, among other warning signs, high default rates, credit ratings declines, losses, and government and newspaper reports about the abandonment of underwriting standards." (internal citations omitted)).

Applying that reasoning here, the Court concludes that Wells Fargo has adequately alleged that JPMorgan had actual knowledge of an Event of Default. Specifically, Wells Fargo alleges that after the Chetrit Group discovered that ROCO Real Estate's T12 records were falsified pursuant to the due diligence process it undertook as a precursor to obtaining JPMorgan's loan, it notified JPMorgan about the falsification. Compl. ¶ 58. Wells Fargo alleges that Chetrit Group informed JPMorgan of the falsification "over five months" before JPMorgan went on to originate the mortgage loan. *Id.* Wells Fargo also alleges that JPMorgan was provided with financial records that would have enabled it to independently verify the falsification of the T12 documents. *Id.* ¶ 54. These allegations are sufficient to state a claim. JPMorgan's argument that Wells Fargo has failed to plead actual knowledge is unavailing, at least at this early stage of the litigation.

## II.    Material Breach

The MLPA also provides that to trigger the repurchase remedy under the agreement, a breach must "materially and adversely affect[] the value of the Mortgage Loan or the interest of the Purchaser (of the holders of the Certificates) therein." MLPA at 10. JPMorgan argues that Wells Fargo has not sufficiently pled that it is entitled to relief under the agreement because it has not alleged that any breach was material such that it had a "material impact" on the value of the mortgage loan held by the trust. Def. Memo at 18. Although JPMorgan acknowledges that Wells

Fargo has alleged that the false T12 records led to an overstated net operating income of the real estate portfolio that served as collateral for the mortgage loan, JP Morgan argues that Wells Fargo has not alleged *how* that overstatement ultimately impacted the value of the real estate portfolio itself. *Id.* at 18-19.  Further, JPMorgan argues that Wells Fargo has failed to allege that the falsified T12s materially reduced the price a willing purchaser would have paid for the mortgage loan or increased the risk of loss on the mortgage loan.  *Id.* at 19.

These arguments are unavailing.  A plaintiff may plead material breach where the breach materially increases a loan's *risk* of loss.  *See Home Equity Mortg. Tr. Series 2006-1 v. DLJ Mortg. Cap., Inc.*, 109 N.Y.S.3d 231, 233 (N.Y. App. Div. 2019) ("The court correctly granted plaintiffs' motion for summary judgment to the extent that it sought a ruling that the phrase a breach that 'materially and adversely' affected the interest of certificateholders, as stated in the repurchase protocol, is not limited to loans in default, and applies to any breach that 'materially increased a loan's risk of loss.'"); *see also MASTR Adjustable Rate Mortg. Tr. 2006-OA2 v. UBS Real Est. Secs. Inc.*, No.12 Civ. 7322, 2015 WL 764665, at *15 (S.D.N.Y. Jan. 9, 2015).  Here, Wells Fargo has adequately alleged that JPMorgan's failure to disclose the falsified financial records underlying its valuation of the real estate portfolio collateral to the mortgage loan materially increased the loan's risk.  The Complaint alleges that JPMorgan's failure to disclose led to an overvaluation of the real estate portfolio that purportedly secured the mortgage loan.  Compl. ¶¶ 63-64.  Wells Fargo has alleged that, in marketing certificates in the Trust to investors, JPMorgan presented the false T12s as accurate representations of the value of the properties backing the loan, thereby impacting the loan-to-value ratio presented to prospective certificateholders.  *Id.* ¶ 63.  At this stage of pleading, these allegations are sufficient to claim material breach.  *Cf. Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, No. 11 Civ. 505, 2011 WL 2610661, at *6 (S.D.N.Y. June 27, 2011) (finding plaintiff's allegation that a loss

of anchor tenant that materially and adversely affected valuation of property affected the value of collateral mortgage loan sufficient).

Accordingly, JPMorgan's Motion to Dismiss Count I of the Complaint is **DENIED**.

### CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that the Motion to Dismiss filed by Defendant JPMorgan is **DENIED**.

The parties are directed to file a joint status letter within fourteen (14) days of the date of this Order that: (1) proposes next steps in this litigation, with a proposed amended case management plan included as an attachment; (2) states whether the parties seek a referral to the District's Mediation Program or for a settlement conference before the assigned Magistrate Judge; and (3) describes any other matters the parties wish to address.

The Clerk of Court is respectfully requested to terminate ECF No. 42.

SO ORDERED.

Dated: March 30, 2026

New York, New York

_____
DALE E. HO
United States District Judge

9