# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 1, 2026

Via ECF
The Honorable Dale E. Ho,
    U.S. District Court for the Southern District of New York,
        Thurgood Marshall U.S. Courthouse,
            40 Foley Square, Courtroom 905,
                New York, NY  10007.

Re:    *Wells Fargo Bank, N.A.* v. *JPMorgan Chase Bank, N.A., et al.*,
        Case No. 25-cv-01943

Dear Judge Ho:

Pursuant to the Court's Order (ECF No. 93), I write on behalf of JPMorgan Chase Bank, N.A. ("JPMorgan") regarding JPMorgan's requests (i) for a protective order precluding Plaintiff's belated demand to depose JPMorgan's Global Head of Commercial Mortgage-Backed Securities ("CMBS"), Brian Baker, and (ii) to compel the production of diligence from Situs Holdings LLC, the special servicer of the trust on whose behalf this action was brought—conducted in connection with the very same mortgage loan ("Loan") at issue in this case.

This case concerns the $481 million Loan JPMorgan made to affiliates of the Chetrit Group in June 2019 and securitized through a CMBS trust ("Trust") the following month. The Loan proceeds were used to finance the purchase of a 43-property portfolio of multifamily residential properties from ROCO Real Estate LLC ("ROCO"). Years later, in 2023, ROCO's co-CEO pled guilty to falsifying records related to certain of those properties. Plaintiff (the CMBS Trustee) seeks to hold JPMorgan liable for ROCO's fraud and force JPMorgan to repurchase the Loan, even though JPMorgan was a *victim* of the fraud and knew nothing of it. Plaintiff's claim against JPMorgan requires proof that JPMorgan had "actual knowledge" that financial information provided in connection with the Loan was not "true, complete and correct in all material respects." (Compl. ¶¶ 103, 107-08.) Discovery has not revealed a shred of evidence that JPMorgan had "actual knowledge" of ROCO's fraud, and the testimony and documents Plaintiff seeks from Mr. Baker are nothing more than a last-minute fishing expedition in hopes that Mr. Baker (a senior executive with no role in underwriting) will provide some new fact that will save Plaintiff's claim.

At the same time, Plaintiff refuses to produce relevant documents from the Loan diligence performed by Situs Real, an affiliate of Situs Holdings LLC (together, "Situs"), the Trust special servicer directing this litigation. Those improperly withheld documents—which Plaintiff agreed to produce more than a year ago—relate directly to the knowledge Situs and

certificateholders had at the time the Loan was securitized, and thus constitute important discovery relevant to JPMorgan's defenses.

### I. Mr. Baker's Testimony Has No Bearing on Plaintiff's Repurchase Claim Because Mr. Baker Had No Role in Underwriting.

Seemingly because fact discovery revealed no evidence that JPMorgan knew of any fraud or material falsity in the financials provided to it, Plaintiff noticed Mr. Baker's deposition three weeks before the close of fact discovery, and months after the parties had negotiated the list of fact witnesses. Additionally, Mr. Baker was not among the document custodians previously negotiated by the parties and so his custodial documents have not been reviewed by JPMorgan. Mr. Baker is the seniormost executive in JPMorgan's global CMBS business. Mr. Baker was at most tangentially related to the Loan given his position on JPMorgan's CMBS Underwriting Committee. Mr. Baker played no role in underwriting the Loan or reviewing the historical operating statements reflecting the ROCO properties' uncollected other income. His only involvement with the Loan was his membership on the Committee that ultimately approved the Loan, and Plaintiff does not allege any misconduct or failure of oversight by the Committee. As such, it is unclear what relevant, unique information Mr. Baker may have that will save Plaintiff's claim against JPMorgan.

Moreover, after depositions of nearly 20 fact and three expert witnesses, no witness has testified that Mr. Baker was critical to the underwriting of the Mortgage Loan or that he could offer unique, firsthand testimony on any issue in this case. None of the members of the JPMorgan deal team who testified in discovery stated that Mr. Baker had any meaningful role in underwriting the Loan. (*See, e.g.*, Colella Deposition Tr. at 43:23-44:3 ("Q. On any of the loan deals that you worked on at JPMorgan, do you recall Brian Baker ever being personally involved in the deal? A. No.")); (King Deposition Tr. at 131:24-132:7 (explaining that she would not expect Mr. Baker to be involved during the Term Sheet negotiation process)); (Geoghan Deposition Tr. at 9:10-12 ("Q. Is Mr. Baker involved in underwriting loans? A. No."); 22:20-23 ("Br[i]an is head of the global, multiple businesses report up to him. He is not involved in underwriting, structuring or pricing. He has no role in any of this stuff.")).

Finally, Mr. Baker is exactly the kind of senior executive the apex deposition doctrine is designed to protect. *See Marsh USA LLC* v. *Parrish*, 2025 WL 3650773, at *3 (S.D.N.Y. Dec. 17, 2025); *Hallmark Licensing LLC* v. *Dickens Inc.*, 2018 WL 6573435, at *4-5 (E.D.N.Y. Dec. 13, 2018). That Mr. Baker may have been an "ultimate decision-maker" who approved the Loan is "of no moment" and is insufficient to justify his deposition. *Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors* v. *City of New York*, 787 F. Supp. 3d 4, 7-8 (S.D.N.Y. 2025); *see also Marsh USA*, 2025 WL 3650773, at *3-4.[1]

---

[1]    Should the court order the deposition of Mr. Baker, JPMorgan respectfully requests that the deposition be limited to three hours, in light of Mr. Baker's seniority and limited relevance to Plaintiff's claims. *United States* v. *Anthem, Inc.*, 2026 WL 1410165, at *5 (S.D.N.Y. May 20, 2026) (limiting deposition of former senior executive to half day).

**II. Situs's Refusal to Produce Indisputably Relevant Documents Regarding Its Own Diligence of the Loan at Issue Is Unacceptable.**

Plaintiff agreed more than a year ago to produce Situs's documents related to the ROCO properties and/or Situs's diligence work related to the Loan. Nevertheless, Plaintiff now inexplicably refuses to produce documents related to Situs's diligence work for Shelter Growth Capital Partners ("SG Capital"), the initial directing certificateholder of the Loan securities. As explained in JPMorgan's March 18, 2026 letter (ECF No. 85), the prior knowledge of Situs (as the special servicer directing this litigation) about any material inaccuracy in ROCO's financial statements at the time the Loan closed and was securitized is highly relevant to JPMorgan's defenses to Plaintiff's claim.

Situs's documents related to its diligence for SG Capital are probative of what Situs observed in ROCO's historical financial statements and communicated to SG Capital as compared to what Situs communicated to JPMorgan. JPMorgan's First Set of Requests for Production, served on May 15, 2025, called for "All Documents and Communications Concerning any of the Properties" subject to the Loan and "All Documents and Communications Concerning any due diligence You or Your affiliate(s) conducted in connection with" the Loan. (*See* ECF No. 85-1.) Plaintiff agreed to respond for both Situs Holdings and its affiliate. Plaintiff cannot now arbitrarily refuse to produce documents within Situs's custody and that bear on multiple issues in dispute in this action, based on a non-specific, unilateral determination that they are somehow not relevant.

Those documents clearly bear on JPMorgan's defenses, including Situs's (and the Trust's) prior knowledge of any alleged Material Breach when the Trust assumed the Loan in 2019, and Situs's (and the Trust's) failure to "promptly notify" JPMorgan of any such purported breach until November 2024, in violation of Section 8(a) of the Mortgage Loan Purchase and Sale Agreement. (*See* ECF No. 1-1 § 8(a); Compl. ¶ 95.) Plaintiff's response that the contract does not "release[]" JPMorgan based on SG Capital's knowledge misses the point (ECF No. 86 at 1); the documents go to materiality, contemporaneous knowledge, and Plaintiff's compliance with its notice obligations—all issues Plaintiff placed in dispute through its own complaint. Moreover, given Situs reviewed the same financial information and did not identify any material inaccuracies therein, Plaintiff cannot plausibly accuse JPMorgan of actual knowledge of such an inaccuracy.

Any timeliness argument by Plaintiff is meritless. JPMorgan raised this issue promptly after Plaintiff produced the contents of a then-newly identified folder related to Situs's diligence for JPMorgan. Plaintiff's suggestion that JPMorgan should have asked specifically about the SG Capital diligence earlier because it knew about it "seven years ago" ignores and distorts the events leading to JPMorgan's request for the documents, as well as Plaintiff's own discovery obligations. (ECF No. 86 at 2.) At any rate, Plaintiff states that it "stands ready to produce the documents" (*id.* at 3), which establishes that the burden of production is minimal and is far outweighed by the documents' relevance.

Sincerely,

/s/ *Robert A. Sacks*
Robert A. Sacks

cc:    All counsel of record (via ECF)

-3-