# Exhibit 2

Case 1:25-cv-01943-DEH    Document 95-2    Filed 07/01/26    Page 2 of 4

MICHELLE STROMBERG  Conf.                                        February 26, 2026
Wells Fargo Bank vs JPMorgan Chase Bank                          1–4

**Page 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------
WELLS FARGO BANK, NATIONAL ASSOCIATION, as
Trustee for the Benefit of the
Certificateholders of J.P.
Morgan Chase Commercial
Mortgage Securities
Trust 2019-MFP, Commercial
Mortgage Pass-Through Certificates,
Series 2019-MFP, by and through
Situs Holdings, LLC, as
Special Servicer under the
Trust and Servicing Agreement,
dated as of July 18, 2019,
        Plaintiff,
         v.
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
MEYER CHETRIT, SHADOW CREEK OWNER, LLC, and
3100 DANIEL MCCALL DRIVE, LLC,
    Defendants.    Case No: 1:25-cv-01943-DEH
----------------------------------------
   ****C O N F I D E N T I A L****
Videotaped Deposition of MICHELLE STROMBERG
            9:00 a.m.

DATE:  Thursday, February 26, 2026

LOCATION:  Quinn Emanuel Urquhart
           & Sullivan, LLP
           295 Fifth Avenue New York
           New York 10016
REPORTED STENOGRAPHICALLY BY:
Jennifer Miller, RMR, CRR, CCR-NJ,
CCR-WA, CCR-NM, CALIFORNIA CSR#14652
Notary Public: NJ, NY, PA, DE

**Page 2**

A P P E A R A N C E S

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  BLAIR A. ADAMS, ESQ.

295 Fifth Avenue

New York, New York 10016

(212) 849-7000

blairadams@quinnemanuel.com

Attorneys for Plaintiff


SULLIVAN & CROMWELL, LLP

BY:  JONATHAN S. CARTER, ESQ.

     GULLIVER BRADY, ESQ.

125 Broad Street

New York, NY  10004-2498

(212) 558-3031

carterjo@sullcrom.com

Counsel for Defendant


Also present: Adrienne Chemel, videographer

Nicholas Hardiman, Law Clerk -- Quinn

Jennifer Loach, JPMorgan Chase (via Zoom)

**Page 3**

I N D E X
WITNESS                                        PAGE
MICHELLE STROMBERG
  EXAMINATION:
BY ATTORNEY ADAMS                         6
      E X H I B I T S
Stromberg 1  Document Bates-stamped         20
             FHFA-OIG_116

Stromberg 2  Document Bates-stamped         45
             JPMC-WF-71150
Stromberg 3  Document Bates-stamped         52
             JPMC-WF-69711

Stromberg 4  Document Bates-stamped         62
             JPMC-WF-71172
Stromberg 5  Document Bates-stamped         62
             IronHound_16080

Stromberg 6  Document Bates-stamped         82
             JPMC-WF-481979
Stromberg 3A Consolidated ROCO Portfolio    87
             Version 8

Stromberg 7  Document Bates-stamped         91
             JPMC-WF-209280
Stromberg 7A Excel Spreadsheet              95
Stromberg 8  Document Bates-stamped         99
             JPMC-WF-72007

Stromberg 9  Document Bates-stamped        105
             JPMC-WF-73298
Stromberg 10 Document Bates-stamped        109
             JPMC-WF-72069

Stromberg 11 Document Bates-stamped        120
             JPMC-WF-128122

**Page 4**

EXHIBIT CONT'D
Stromberg 11A Excel Spreadsheet            122
Stromberg 12 Document Bates-stamped        141
             JPMC-WF-185469

Stromberg 13 Document Bates-stamped        153
             JPMC-WF-75725
Stromberg 14 Document Bates-stamped        164
             JPMC-WF-81086

Stromberg 14A Excel Spreadsheet            168

Stromberg 15 Email dated April 25, 2019    187

Stromberg 16 Email dated 5/9/2019          197

Stromberg 17 Email dated 5/8/2019          205

Stromberg 17A Excel Spreadsheet            206

Stromberg 18 Document Bates-stamped        211
             JPMC-WF-135667
Stromberg 19 Document Bates-stamped        220
             JPMC-WF-145608

Stromberg 20 Document Bates-stamped        229
             JPMC-WF-335331
Stromberg 21 Document Bates-stamped        242
             JPMC-WF-214739

Stromberg 22 Document Bates-stamped        251
             JPMC-WF-191549
Stromberg 23 Document Bates-stamped        257
             JPMC-WF-145790

Stromberg 24 Document Bates-stamped        265
             JPMC-WF-5369
Stromberg 25 Document Bates-stamped        273
             JPMC-WF-5378

Stromberg 26 Document Bates-stamped        273
             JPMC-WF-3581



MICHELLE STROMBERG  Conf.                    February 26, 2026
Wells Fargo Bank vs JPMorgan Chase Bank              257–260

Page 257

brokerage firm, like, the complexity of the transaction. It's all negotiated, so it doesn't seem particularly crazy.

BY ATTORNEY ADAMS:

Q.   And you didn't know what the arrangements were among Post Road, Iron Hound, and the borrower, right?

A.   No.

- - -

(Whereupon, Exhibit 23 was marked for identification.)

- - -

ATTORNEY ADAMS:  The Court Reporter has placed in front of you a document marked as Exhibit 23, which is an email from you to Joe Geoghan and Liz King as well as Alex Roth, dated May 29, 2019, with the subject "ROCO."

And at the top of the email -- well, and it was produced at JPMC-WF-145790 to 145794.

BY ATTORNEY ADAMS:

Q.   At the top of the email, it says [as read]:

"OG equals 7."

Page 258

Do you see that?

A.   Yes.

Q.   OG is a risk rating?

A.   Yes.

Q.   And 7 is the highest risk rating, correct?

A.   I don't remember, but 7 seems high, yes.

Q.   Leverage is one of the reason this -- one of the reasons this deal had a high risk rating?

A.   That makes sense, yes.

Q.   Do you recall any other reasons why this deal had a high risk rating?

A.   There's, like, a calculation. I think it's, like, leverage and DSER. I don't -- I don't remember.

Like, it's -- I don't -- like, there's a specific calculation that -- there was a guy by the name of Don Shokrian. Like, his group kind of like owns that.

I don't remember exactly the inputs that you put into the model, but that -- leverage is one of them, and I think coverage is one of them too.

Page 259

Q.   And who's Don Shokrian?

A.   He's, like, the head of credit. It's like another group. That's outside of the real estate group.

He sits on committee too.

Q.   There's a list of committee follow-ups.

Do you see that?

A.   Yes.

Q.   And one of them is fire.

Do you see that?

A.   Yes.

Q.   Do you recall learning that there had been fires at the property at some point very late in the due diligence process?

A.   No.

Q.   There's something called a Baker value analysis.

Do you see that?

A.   Where is that?

Q.   It's right underneath fire.

A.   Oh. Yes, I see that.

Q.   Do you know what that is?

A.   No.

Q.   There's not a standard thing you do

Page 260

for every deal at J.P. Morgan that's called a Baker value analysis?

A.   No.

ATTORNEY CARTER:  Object to form.

BY ATTORNEY ADAMS:

Q.   No. You're laughing.

Is that -- why is that funny?

A.   I just -- I don't know why I'm laughing, but I just -- I've never -- I've never heard of a Baker value analysis.

Q.   Okay. So whatever this is, it seems like it's pretty unique to this deal?

ATTORNEY CARTER:  Object to form.

THE WITNESS:  Yeah. Was there a property named Baker maybe? I don't know -- like, I don't know what it's referring to, but...

BY ATTORNEY ADAMS:

Q.   There was someone on the credit committee named Brian Baker, correct?

A.   Yes.

Q.   But there wasn't a value analysis that you performed for Brian Baker on every



Page 261

deal?

A.   No.

ATTORNEY CARTER:  Object to form.

THE WITNESS:  Oh, sorry.

BY ATTORNEY ADAMS:

Q.   Two down, it says [as read]:
"Audits of rent rolls and bank statements."
Do you see that?

A.   Yes.

Q.   It says [as read]:
"Need to reach out to sponsor to understand what diligence they've done on the information they have provided."
Do you see that?

A.   Yes.

Q.   Why would you need a -- strike that.
You were performing your own diligence, correct?

A.   Oh, yeah.  Yes.

Q.   So why would you need to reach out to the sponsor to understand what diligence they

Page 262

had performed?

A.   Was that a question that the credit committee specifically asked us to go back and ask?

Q.   If you go back to Exhibit -- if you go back to -- if you go back to Exhibit 21, you'll see Mr. Baker's email and Mr. Rood's email.

A.   Yep.

Q.   And you see Mr. Rood asked for -- asked [as read]:
"I would like" -- "I would also like to see if we have tracked credit loss at these assets and reconciled the rent rolls to bank statements to ensure that cash flow matches their topline rents."
Do you see that?

A.   Yes.

Q.   No reference to the sponsor's diligence, right?

A.   No.

Q.   Were you looking to see what the

Page 263

sponsor had done because you had not done the due diligence that Mr. Rood was asking about?

ATTORNEY CARTER:  Object to form.

THE WITNESS:  Definitely not.

BY ATTORNEY ADAMS:

Q.   You don't know, sitting here today, why?

ATTORNEY CARTER:  Object to form.

BY ATTORNEY ADAMS:

Q.   You were calling for the sponsor's due diligence; is that right?

ATTORNEY CARTER:  Object to form.

THE WITNESS:  I don't know why we're asking for it, correct.

BY ATTORNEY ADAMS:

Q.   Not something you would do on every deal?

A.   I mean, there's two parts to this: audits of rent rolls and bank statements.
So I think bank statements, we would always try to get because they're part of our diligence checklist.  And you could ask the

Page 264

sponsor, like, what have they also done separately.
It's not a -- I don't think it's, like, a out-of-the-normal course of business question to ask.  I don't know why we're asking it here.
Maybe it came up out of the final credit committee, because it's under committee follow-ups.

Q.   When you say "maybe it came up from out of the final credit committee," you're speculating?

ATTORNEY CARTER:  Object to form.  Misstates the testimony.

THE WITNESS:  I'm just reading.
It says "committee follow-ups," and that's what this is -- like, all these bullets are saying.
So I'm -- I'm not speculating.
I'm reading this and saying it came up out of a committee follow-up, based on the fact that it's under the header "committee follow-ups."

BY ATTORNEY ADAMS:

Q.   Okay.  Understood.  And that's fair.

