# EXHIBIT C

**In the Matter Of:**

Wells Fargo Bank vs JPMorgan Chase Bank

1:25-cv-01943-DEH

**JOHN COLELLA**

*January 30, 2026*

*Confidential*

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

J. Colella

Q. So if I understand your testimony, it is that fraud would not have entered your mind based on Mr. Perone's email to you that there was $3.5 million of other income that's, quote, not real, correct? 01:30 01:30 01:31 01:31 01:31 01:31

MR. CARTER: Object to form. 01:31

A. Correct. 01:31

BY MR. JOBE: 01:31

Q. If Mr. Perone had said there's $3.5 million of other income that has been faked, would fraud have entered -- the possibility of fraud entered your mind at that time? 01:31 01:31 01:31 01:31 01:31

MR. CARTER: Object to form. 01:31

A. Yeah, potentially. 01:31

BY MR. JOBE: 01:31

Q. At a minimum when you received this email, you knew that the borrower's representative was reporting a $3.5 million inaccuracy in the seller's financial statements? 01:31 01:31 01:31 01:31 01:31

MR. CARTER: Object to form. 01:31

A. Again, inaccuracy suggests that 01:31

J. Colella

all of that is not owed. So I think it's still that the stage -- and based on of those responses, it's very unclear if there's 300 -- 3.5 million that's owed but hasn't been collected. Is all of that ultimately owed, or is, you know, any portion of it not actually owed? I mean, it's still very ambiguous. 01:31 01:32 01:32 01:32 01:32 01:32 01:32 01:32

BY MR. JOBE: 01:32

Q. You know, assuming there's accrual-based accounting going on here, even if there's reporting of income that is, in fact, owed, if that income is never collected, it would still be inaccurate to continue reporting that income on historical financials, correct? 01:32 01:32 01:32 01:32 01:32 01:32 01:32

MR. CARTER: Object to form. 01:32

Object to form. 01:32

A. It kind of depends on the firm's accounting methodology. Again, I'm not a CPA. I'm not expert on accrual accounting. My understanding is that generally there would be some sort of write-off at some stage if it ultimately 01:32 01:32 01:32 01:32 01:32 01:32

J. Colella

wasn't collected. But some firms, they don't have an explicit write-off line item. They just effectively embed the net collected amount over time in the various line items, so it kind of depends on firm to firm. 01:33

It's not something that I feel like it's kind of a wholesale universal methodology that you can kind of bake on or just understand by looking at the rolled up financial summaries. 01:33

BY MR. JOBE: 01:33

Q. You don't recall any discussions with Ms. King about the responses you received from Mr. Perone on February 22, 2019? 01:33

A. I do not recall, no. 01:33

Q. Same question with respect to conversations with anyone else at JPMorgan? 01:33

A. Yeah, I do not recall talking to anyone else. 01:33

Q. At a minimum, when you received this email, you knew that the borrower's 01:34

J. Colella

representative was reporting that there was $3.5 million in other income that it would not be appropriate to keep in the underwritten other income figures; is that fair? 01:34

MR. CARTER: Object -- object to form. 01:34

A. It kind of depends on, I think, each individual's approach and belief on what is a realistic go-forward collection amount. If it is owed but not collected and you have a belief that new operator will have the means and ability to collect, I don't think it's outrageous to assume you collect it. So I think it kind of just depends on the sponsor's operating plan relative to what's ultimately kind of reported and in place. 01:35

BY MR. JOBE: 01:35

Q. When Mr. Perone told you in this email that there's $3.5 million of other income that was not real or not being collected, you understood that to be him telling you that it was his belief that 01:35