# EXHIBIT M

properties, correct, sir?
ATTORNEY SACKS: Objection.
THE WITNESS: I use the term as a comparison, right. And there are some data exchanges that happen that help us start populating a spreadsheet or define the universe of units or, you know, get a sense of what they are saying the occupancy is.
So we would use those pieces of information as a reference tool, as a comparison. But our approach is to build these, effectively, on our own.
BY ATTORNEY ADAMS:
Q. Is it concerning to you that Mr. Perone has identified $3.5 million of other income that you did not believe was actually being collected?
ATTORNEY SACKS: Objection.
THE WITNESS: Is it a concern? Not necessarily. We have to look at the totality of how we approach the underwriting. We'd have to look at what we think the new buyer's business plan is.
For example, they may not be --

their plan may not be to rely as much on other income issues. They may want to increase the rent.

They're underwriting higher expenses, which maybe means they're going to try to take better care of the units, drive higher rents.

So the number that we care most about is what is the net cash flow number. And I'd have to see that to decide whether this -- the concept of charging versus collecting are -- they're charging for it. Whether they're collecting it successfully or not could be a function of their operational expertise or their infrastructure or lack thereof.

And it doesn't mean that they can't collect it in the future. They are owed the money. And they may have security deposits which they can net against those owed dollars.

BY ATTORNEY ADAMS:

Q. You would want to understand what Mr. Perone meant by "There's $3.5 million of other income that we did not believe was

actually being collected" before taking wholesale the historical other income figures from their financial statements and plopping them into your underwriting model, correct, sir?

ATTORNEY SACKS: Objection.

THE WITNESS: Sorry. Say that again.

BY ATTORNEY ADAMS:

Q. You would want to understand what Mr. Perone meant by the statement "We identified 3.5 million of other income that we did not believe was actually being collected," before taking wholesale the historical other income figures from the financial statements and using them without adjustment in your underwriting model.

Correct, sir?

ATTORNEY SACKS: Objection.

THE WITNESS: The cash flow number that we're going to lend on is the sum of many inputs, income inputs and expense inputs.

The concept of what is another income number to underwrite is one of

those components. And our approach to that number can be taking a conservative approach if we took a more aggressive approach on occupancy and rents; or, conversely, it could be a more conservative approach if we were underwriting a higher vacancy and not as optimistic on the rents.

It's also a function of the nature of the assets. You know, are these other income items common in the marketplace? If you go to rent an apartment, are there a series of other income items that, as a tenant, you would be forced to pay or required to pay?

BY ATTORNEY ADAMS:

Q. So I'm going to ask my question again because I think your answer didn't quite -- I think we might be passing each other in the night here.

A. Okay.

Q. My question is very simple.

My question is: Would you want to understand Mr. Perone's statement before adopting the other income figures that include

3.5 million of other income that Mr. Perone said is -- he does not believe was actually being collected?

Would you want to get a better understanding of what he meant by that before adopting the numbers that he says are not being collected?

ATTORNEY SACKS: Objection.

THE WITNESS: We -- our process will do that -- does that.

Do we look at what was happening historically? This is a -- this is a purchase transaction. The previous party is not a party to the deal that we're doing. We may not have access to that information. In fact, on purchase transactions, sometimes we don't get the historical information.

So the importance in the process is minimal. And it's -- the question can, I would say, only be answered -- don't want to say only be answered. But the question is more appropriately answered when you look at all of the other items.

And one of the items here that

is a possible counterbalance to that is that, you know, operating expenses is a way to underwrite more conservative numbers.

BY ATTORNEY ADAMS:

Q. So am I understanding your answer correctly that, in your view, understanding whether and to what extent the historical financial information for a portfolio of 43 multifamily properties that is part of an acquisition is not really important to your underwriting process?

ATTORNEY SACKS: Objection.

THE WITNESS: It is a information input, a data input. The word "important," I'm not sure I -- it can be if we're doing other -- if we're taking different approaches on some of the other items.

And the reason why I'm being careful is because the bottom-line number is the most important number.

BY ATTORNEY ADAMS:

Q. Well --

A. And to the extent that this

representation by -- or this piece of information -- first of all, this is not written by anybody from J.P. Morgan. So I don't know the accuracy of this, right.

It wasn't done by anybody from J.P. Morgan. It's very early in the process, if I recall when this deal was funded. So it's what I would call very preliminary before I think J.P. Morgan folks likely had the ability to form their own opinion.

So the "other income" line item on transitional multifamily, more what we call now workforce housing, is a common income item that matters. I would say, if you're being aggressive on the rent, then you would want to be very accurate on the other income.

If you're conservative on the rent, then you can take a more optimistic view of what happens at the other income.

And it sounds like it might have been charged but not collected, which could fall into a bad debt line item.

Q. You said earlier -- and the reason I'm asking my follow-up question is you said earlier that the importance in the process of